BARRIENTOS PC
J. Alejandro Barrientos, SBN 346676
Alejandro@bts.law
145 S. Fairfax Avenue, Suite 200-152
Los Angeles, CA 90036
T. 626.551.4564
F. 626.427.6753

Attorney for Plaintiff
AMIR FAKHRZADEH

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR FAKHRZADEH, an individual, on behalf of himself and all others similarly situated, | Case No. 2:25-cv-09896 |
| | CLASS ACTION COMPLAINT |
| Plaintiff, | |
| | ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF |
| v. | |
| MILLENNIUM DENTAL TECHNOLOGIES, INC.; ROBERT HAROLD GREGG II II; DAWN GREGG; ANTHONY CANNON; BRIAN ALEXANDER; AUDREY QUINONEZ, | 1. Civil RICO, 18 U.S.C. § 1962 |
| | 2. Fraudulent Inducement |
| | 3. Fraudulent Concealment |
| | 4. Unfair Competition Law, Cal. Bus. & Prof. Code § 17201 |
| Defendants, | 5. Breach of Contract |
| | 6. Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. |
| | DEMAND FOR JURY TRIAL |

# **TABLE OF CONTENTS**

INTRODUCTION..................................................................................... 1

PARTIES ............................................................................................... 2

JURISDICTION & VENUE ..................................................................... 3

ALLEGATIONS OF FACT....................................................................... 3

    I.     Millennium Dental Technologies, Inc., sells the PerioLase MVP-7 and related training for tens of thousands of dollars per unit.................................................................................... 3

    II.    Millennium Dental Technologies, Inc., faces financial difficulties during the COVID-19 pandemic................................. 6

    III.   Defendants defraud plaintiff Dr. Amir Fakhrzadeh to compensate for slowing sales related to the COVID-19 pandemic. ........................................................................................ 6

    IV.   RICO-related allegations: Defendants defraud other dentists in the same manner that they defrauded plaintiff...................... 12

         A.    Defendants defraud Dentist 1 using interstate wires. ........13

         B.    Defendants defraud Dentist 2 using interstate wires. ........14

ALTER EGO LIABILITY ....................................................................... 15

ARBITRATION-RELATED ALLEGATIONS ........................................... 15

CLASS ALLEGATIONS......................................................................... 18

    I.     The Proposed Class ................................................................. 18

    II.    Requirements of F.R.C.P. 23 .................................................. 19

         A.    Numerosity & Ascertainability .................................... 19

         B.    Predominance of Common Issues ............................... 19

         C.    Typicality ..................................................................... 20

         D.    Adequacy of Representation......................................... 21

         E.    Superiority, Injunctive and Declaratory Relief, and Risk of Inconsistent or Dispositive Adjudications ..........................21

ii

TOLLING OF STATUTES OF LIMITATION ................................................. 22

    I.    Fraudulent Concealment ....................................................... 22

    II.   Estoppel ................................................................................. 22

    III.  The Discovery Rule ............................................................... 23

CAUSES OF ACTION .......................................................................... 23

    I.    Claim I – Civil RICO, 18 U.S.C. § 1962(a), (c)-(d) ...................... 23

    II.   Claim II – Fraudulent Inducement ....................................... 27

    III.  Claim III – Fraudulent Concealment ................................... 29

    IV.  Claim IV – Unfair Competition Law,
           Cal. Bus. & Prof. Code § 17200 ............................................ 32

    V.   Claim V – Breach of Contract ............................................... 33

    VI.  Claim VI – Declaratory Judgment Act,
           28 U.S.C. §§ 2201-2202 ........................................................ 34

PRAYER FOR RELIEF .......................................................................... 35

DEMAND FOR JURY TRIAL .................................................................. 37

iii

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.     Plaintiff Dr. Amir Fakhrzadeh, DMD, MS, CAGS, brings this action for monetary damages, declaratory relief, and injunctive relief on behalf of himself and a proposed class of similarly situated plaintiffs.

2.     This action arises from the fraudulent sale of the PerioLase MVP-7 ("Periolase")—a dental laser regulated by the U.S. Food and Drug Administration—to dentists around the country in and around 2020 and 2021 by defendant Millennium Dental Technologies, Inc. ("MDT"), and its officers, employees, and agents.

3.     In that time, MDT entered into purchase order agreements with plaintiff and other dentists, promising to sell newly manufactured Periolase units at a discount as part of a sales push related to the COVID-19 pandemic. However, MDT fraudulently provided the dentists with Periolase units that were used, refurbished, years old, and/or subject to prior customer complaints.

4.     Dr. Fakhrzadeh's Periolase unit, which he purchased in April of 2021, was manufactured in 2012, had been repaired twice, and had been the subject of a prior customer complaint—none of which was ever revealed to Dr. Fakhrzadeh by MDT or its officers, employees, or agents.

5.     To the contrary, defendants lulled Dr. Fakhrzadeh into a false sense of security with repeated statements that he would receive or had received a new Periolase unit.

6.     What's more, to conceal their fraudulent scheme, defendants intentionally altered the usual format of serial-number stickers that defendants placed on Periolase units such that manufacturing dates were

1

omitted. Plaintiff and other dentists in the proposed class were therefore unable to detect defendants' fraud until recently.

7.    Dr. Fakhrzadeh seeks relief on behalf of himself and dentists who were similarly defrauded by defendants.

## PARTIES

8.    Plaintiff Dr. Amir Fakhrzadeh, DMD, MS, CAGS, an individual, is and was at all relevant times a resident of New Jersey, where he is a licensed dentist.

9.    Defendant Millennium Technologies, Inc., is a California corporation with its principal place of business in Cerritos, California.

10.    Defendant Robert Harold Gregg II, an individual, is a resident of California. He is and was at all relevant times a founder, owner, officer, and director of MDT. At various times, he has served as MDT's president and chief financial officer.

11.    Defendant Dawn M. Gregg, an individual, is a resident of California. On information and belief, she was at all relevant times an owner, officer, and director of MDT. She currently serves as secretary and as a director for MDT.

12.    Defendant Brian Alexander, an individual, is a resident of Georgia. He was at all relevant times an employee or agent of MDT, namely a "Periolase Periodontal Consultant."

13.    Defendant Anthony Cannon, an individual, is a resident of Arizona. He was at all relevant times an employee or agent of MDT, namely a "Practice Integration Director."

14.    Defendant Audrey Quinonez, an individual, is a resident of California. She was at all relevant times an employee or agent of MDT, namely a "Manufacturing and Service Administrator."

## JURISDICTION & VENUE

15.    The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(d)(2) because at least one member of the proposed class of plaintiffs is a citizen of a state different from at least one defendant and the amount in controversy exceeds $5,000,000.

16.    The Court additionally has subject matter jurisdiction over Dr. Fakhrzadeh's individual claims under federal law pursuant to 28 U.S.C. § 1331.

17.    The Court additionally has subject matter jurisdiction over Dr. Fakhrzadeh's individual state law claims under (i) 28 U.S.C. § 1332 because plaintiff is diverse from all defendants and the amount in controversy exceeds $75,000, and (ii) 28 U.S. Code § 1367 because such claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

18.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims asserted in this complaint occurred within the Central District of California.

## ALLEGATIONS OF FACT

**I.    Millennium Dental Technologies, Inc., sells the PerioLase MVP-7 and related training for tens of thousands of dollars per unit.**

19.    Defendant Dr. Robert Harold Gregg II founded MDT in the mid-1990s in California with one other dentist who is not a party to this action.

20.    Dr. Robert Harold Gregg II is an owner and director of MDT.

3

21. Dr. R Robert Harold Gregg II currently serves as MDT's chief financial officer.

22. Dr. Dawn Gregg was at all relevant times the vice president of operations for MDT.

23. MDT manufactures and sells medical devices used in dentistry, including the Periolase.

24. The Periolose is a Class II medical device subject to regulation by the U.S. Food and Drug Administration ("FDA").

25. The Periolose is used to treat gum disease by the removal of diseased gum tissue with a laser.

26. MDT sells 200 or more Periolase units per year.

27. MDT lists the non-discounted price of the Periolase as $59,995 or more.

28. The sale of a Periolase unit often involves the sale of related training, which MDT lists at the non-discounted price of $8,000 or more.

29. MDT also sells a "LANAP package" that includes a Periolase and various accessories and trainings for the non-discounted price of $119,995 or more. "LANAP" is an acronym for "Laser-Assisted New Attachment Procedure."

30. MDT does not, and did not, advertise for sale on its website any refurbished or used Periolase units.

31. Federal regulations impose strict requirements on MDT and its management, including Dr. Robert Harold Gregg II and Dr. Dawn Gregg, to maintain systems and records to identify and track Periolase units to ensure they are fit for use on dental patients.

32. 21 C.F.R. § 820.184 requires MDT to "maintain device history records" that include a Periolase unit's date of manufacture and "[a]ny unique

4

device identifier (UDI) or universal product code (UPC), and any other device identification(s) and control number(s)."

33.   21 C.F.R. § 820.60 requires MDT to "establish and maintain procedures for identifying product during all stages of receipt, production, distribution, and installation to prevent mixups."

34.   21 C.F.R. § 820.160 requires MDT to "establish and maintain procedures for control and distribution of finished [Periolase] devices to ensure that only those devices approved for release are distributed and that purchase orders are reviewed to ensure that ambiguities and errors are resolved before devices are released for distribution." As part of this requirement, MDT must "maintain distribution records which include or refer to the location of . . . any control number(s) used."

35.   21 C.F.R. § 820.20(b)(3) dictates that a "member of management" of MDT must be assigned responsibility for ensuring compliance with 21 C.F.R. Part 820, including the above-referenced sections 820.60, 820.160, and 820.184.

36.   21 C.F.R. § 820.25(b)(2) requires that "[p]ersonnel who perform verification and validation activities [as to Periolase units] shall be made aware of defects and errors that may be encountered as part of their job functions."

37.   MDT uses an electronic record system to track prior sales, services, repairs, and customer complaints for each Periolase unit. This system identifies each Periolase unit based on a serial number assigned by MDT.

38.   On information and belief, individual defendants Dr. Robert Harold Gregg II, Dr. Dawn Gregg, Brian Alexander, Anthony Cannon, and Audrey Quinonez each had access to this system at all relevant times.

## II.    Millennium Dental Technologies, Inc., faces financial difficulties during the COVID-19 pandemic.

39.    In and around 2020 and 2021, MDT faced slowing revenue related to the COVID-19 pandemic that created pressure to sell Periolase units at all costs.

40.    For example, in 2020 or early 2021, MDT applied for a loan through the federal Paycheck Protection Program ("PPP").

41.    As part of the application, MDT, through one of its officers or other agents, was required to attest that the loan was necessary for MDT's continuing operation.

42.    On information and belief, defendant Dr. Robert Harold Gregg II or Dr. Dawn Gregg provided this attestation on behalf of MDT.

43.    In April of 2021, MDT was approved for a PPP loan of $542,955, which was later forgiven in full.

44.    To address slowing sales, MDT initiated a sales push involving heavy discounts for Periolase units. MDT branded this sales push as its "economic stimulus" promotion.

45.    Further, in 2020 and 2021, MDT advertised to dentists via its website that a Periolase unit could "increase your practice income by $100,000 this year."

## III.    Defendants defraud plaintiff Dr. Amir Fakhrzadeh to compensate for slowing sales related to the COVID-19 pandemic.

46.    In early 2021, plaintiff Dr. Fakhrzadeh was completing his dental residency at the Rutgers School of Dental Medicine in Newark, New Jersey.

47.    In anticipation of his transition to a private dentistry practice, Dr. Fakhrzadeh began communicating with sellers of dentistry devices and supplies.

48.    For example, in March of 2021, plaintiff had a telephone conversation with defendants Alexander and Cannon regarding his potential purchase of a new Periolase unit at a discounted price. Defendants Alexander and Cannon indicated to plaintiff that he would receive a discount of approximately 50 percent on his purchase of a new Periolase unit and related training due to MDT's efforts to address slowing sales caused by the COVID-19 pandemic. Neither Alexander, nor Cannon, mentioned the possibility of purchasing a used or refurbished Periolase unit, or receiving a discounted price for doing so. On information and belief, plaintiff was not located in the same state as Alexander or Cannon during this telephone conversation.

49.    On March 23, 2021, Alexander emailed plaintiff while copying Cannon, among others. The subject of the email was "LANAP - Rutgers Grad Special Pricing Consideration." Alexander stated, *inter alia*, "ROI for you will come much faster considering the full LANAP package even pre-covid was $130k." The email never mentioned the possibility of purchasing a used or refurbished Periolase unit, or receiving a discounted price for doing so. On information and belief, plaintiff was not located in the same state as Alexander when he received this email.

50.    On March 30, 2021, Alexander sent a text message to plaintiff in a group text thread that included non-party Samantha DiPerri, a "Periolase Periodontal Consultant" at MDT. Alexander stated, *inter alia*, "[w]e are definitely at rock bottom with the Rutger graduate special consideration stacked with the economic stimulus price promotion," and "[this] [r]eally is an incredible deal, precovid graduate perio program pricing was around $65-

70k." Alexander never mentioned the possibility of purchasing a used or refurbished Periolase unit, or receiving a discounted price for doing so. On information and belief, plaintiff was not located in the same state as Alexander when he received this message.

51. On April 2, 2021, Alexander emailed plaintiff while copying Cannon, among others. The subject of the email was "Rutgers Grad - Historic Price - New." Alexander stated, *inter alia*, "Anthony was able to get creative and save you additional money by having you share an operatory with some fellow Rutgers Grads in your similar situation!" Alexander concluded the email by stating, "Just need to secure a fully refundable deposit via CC of $2500 while you work out financing details so we can lock in your price which Anthony extended past March and your bootcamp date. Enrique will send you a docusign as well. When you get a chance please sign. Thank you!" The email never mentioned the possibility of purchasing a used or refurbished Periolase unit, or receiving a discounted price for doing so. On information and belief, plaintiff was not located in the same state as Alexander when he received this email.

52. In April of 2021, Plaintiff and MDT entered into a purchase order agreement, drafted solely by MDT, that included one Periolase unit, training (to occur in California), and shipping for a total price of $35,795, which constituted a discount of approximately 50 percent from the combined listed prices of the unit and training.

53. On information and belief, defendant Alexander finalized the draft of the purchase order agreement on behalf of MDT.

54. Defendants provided the purchase order agreement to plaintiff via the internet.

55.    Plaintiff executed the purchase order agreement and provided it to MDT via the internet. Plaintiff was not located in California when he did so.

56.    Defendant Alexander executed the purchase order agreement on behalf of MDT.

57.    The purchase order agreement contained the words "Emergency Reboot" and "Economic Stimulus Package" in bright red text at the top of the document, indicating that the agreement contained the COVID-19 related discounts mentioned in Alexander's prior text message to plaintiff.

58.    The purchase order agreement did not state that it was for a used or refurbished Periolase unit.

59.    In a section titled "Laser: Equipment," the purchase order agreement stated, "If the Agreement is for a PPP Package, or a PerioLase MVP-7™ laser, placement of the Agreement, execution of this Agreement and payment of the Deposit, a PerioLase MVP-7™ Periodontal Laser is specifically manufactured and assembled by MDT for Buyer."

60.    On May 27, 2021, defendant Alexander emailed defendant Cannon while copying plaintiff and non-party DiPerri, among others. The subject line of the email was "Update on ETA and shipment." Alexander wrote, *inter alia*, "Anthony. Can you provide an update on ETA for our Rutgers grad superstar team." Nonparty DiPerri responded to Alexander, saying in relevant part, "Hi Guys! Your lasers are coming up for build in our manufacturing que. They need to know what color you would like for your asset."

61.    Despite the language of the purchase order agreement and the telephone, text message, and email communications by defendants regarding the purchase of a new Periolase unit by plaintiff, defendants knowingly sent

plaintiff a used and refurbished Periolase unit that was manufactured almost ten years earlier in 2012. Further, as defendants then knew, the unit was repaired in October of 2016, was the subject of a customer complaint in June of 2017, and was again repaired in January of 2021—just three months before it was falsely presented to plaintiff as a new unit.

62.    On June 11, 2021, defendant Quinonez sent plaintiff an email with the subject "PerioLase Warranty." The email stated, "[a]ttached is a copy of your warranty on your new PerioLase."

63.    However, Quinonez knew that the Periolase unit provided to plaintiff was not "new" because she had responsibility for ensuring that the unit was repaired in January of 2021 due to a charging issue.

64.    The warranty agreement provided to plaintiff was executed by defendant Alexander. The warranty agreement specified that the serial number of the Periolase unit provided to plaintiff was 121498, but it did specify the manufacturing date. The warranty agreement did not otherwise state that the Periolase unit provided to plaintiff was used or refurbished.

65.    Defendant Alexander knew that the Periolase unit associated with the serial number listed in the warranty agreement provided to plaintiff was not new and, to the contrary, was almost a decade old, as indicated in MDT's electronic records that were available to Alexander and the other defendants, but not plaintiff.

66.    To conceal their fraud, defendants intentionally caused to be placed a serial-number sticker on the Periolase unit provided to plaintiff that omitted the unit's manufacturing date, as depicted below:



67.    This was an intentional deviation from defendants' usual practice of including the manufacturing date on serial-number stickers, which was consistent with federal regulations.

68.    Plaintiff relied on defendants' email, text message, and telephone communications regarding his purchase of a new Periolase unit, as well as the terms of the purchase order agreement stating that "a PerioLase MVP-7™ Periodontal Laser is specifically manufactured and assembled by MDT for Buyer."

69.    Plaintiff was justified in relying on such statements by defendants because there was no independent manner for plaintiff to verify the truth or falsity of defendants' statements.

70.    Plaintiff would not have accepted the purchase order agreement if he knew that he would receive a Periolase unit that was approximately ten years old, repaired twice, and subject to a prior customer complaint.

71.    Plaintiff suffered economic injury because of defendants' false and fraudulent statements and omissions, including, but not limited to, the cost of the Periolase unit and training that he would not have otherwise purchased, costs incurred for travel to California for Periolase training that he would not have otherwise incurred, overpayment for the used Periolase unit, a diminished ability to resell the Periolase unit, diminished resale value of the used Periolase unit, shortened usable lifespan of the Periolase unit, and lost future profits caused by the shortened usable lifespan of the Periolase unit.

## IV.    RICO-related allegations: Defendants defraud other dentists in the same manner that they defrauded plaintiff.

72.   In and around 2020 and 2021, MDT engaged in interstate commerce through the sale of Periolase units across the country.

73.    In and around 2020 and 2021, MDT received income directly or indirectly from the fraudulent sale of Periolase units to plaintiff and other dentists, including Dentist 1 and Dentist 2, as further described below.

74.    MDT used such income to operate MDT and conduct its interstate sales of Periolase units.

75.    All defendants conspired to, and did, engage in a scheme to defraud dentists through repeated false claims and omissions in purchase order agreements and other communications that dentists, including plaintiff, Dentist 1, and Dentist 2, would be sold new Periolase units, when,

in-fact, dentists were provided with units that were used, refurbished, years old, repaired, and/or subject to prior customer complaints.

76.    Defendants used interstate wires in furtherance of this fraudulent scheme, including by emailing and calling out-of-state victims regarding defendants' fraudulent sales of Periolase units, as well as by accepting electronic payments for Periolase units from out-of-state victims.

### A.    Defendants defraud Dentist 1 using interstate wires.

77.    Dentist 1 purchased a Periolase and related training from MDT in 2021 after discussing the purchase with Alexander via an email on which Cannon was copied.  On information and belief, Dentist 1 and Alexander were in different states when this communication occurred.

78.    Dentist 1 entered into a purchase order agreement with MDT with terms identical or materially similar to those of plaintiff's purchase order agreement, including the term that "[i]f the Agreement is for . . . a PerioLase MVP-7™ laser . . . a PerioLase MVP-7™ Periodontal Laser is specifically manufactured and assembled by MDT for Buyer."

79.    The purchase order agreement contained the words "Emergency Reboot" and "Economic Stimulus Package" in bright red text at the top of the document, indicating that the agreement contained the COVID-19 related discounts mentioned in Alexander's prior text message to plaintiff.

80.    Dentist 1 received the purchase order agreement via email.

81.    Dentist 1 paid $35,795 to MDT for the Periolase unit, training, and shipping.

82.    Dentist 1 believed that he/she was purchasing a new Periolase unit, but MDT provided a used or refurbished unit that was manufactured in 2012.

83.    The serial-number sticker on the Periolase unit provided to Dentist 1 omitted the unit's manufacturing date.

84.    No defendant or employee or agent of MDT ever informed Dentist 1 that his/her Periolase unit was used or refurbished, or had been manufactured approximately a decade earlier.

85.    Dentist 1 resided in a state other than California at the time of his purchase of the Periolase unit.

**B.    Defendants defraud Dentist 2 using interstate wires.**

86.    Dentist 2 purchased a Periolase and related training from MDT in 2021 after discussing the purchase with Alexander via an email on which Cannon was copied. On information and belief, Dentist 2 and Alexander were in different states when this communication occurred.

87.    Dentist 2 entered into a purchase order agreement with MDT with terms identical or materially similar to those of plaintiff's purchase order agreement, including the term that "[i]f the Agreement is for . . . a PerioLase MVP-7™ laser . . . a PerioLase MVP-7™ Periodontal Laser is specifically manufactured and assembled by MDT for Buyer."

88.    The purchase order agreement contained the words "Emergency Reboot" and "Economic Stimulus Package" in bright red text at the top of the document, indicating that the agreement contained the COVID-19 related discounts mentioned in Alexander's prior text message to plaintiff.

89.    Dentist 2 received the purchase order agreement via email.

90.    Dentist 2 paid $35,795 to MDT for the Periolase unit, training, and shipping.

14

91.   Dentist 2 believed that he/she was purchasing a new Periolase unit, but MDT provided a used or refurbished unit that was manufactured in 2009.

92.   The serial-number sticker on the Periolase unit provided to Dentist 2 omitted the unit's  manufacturing date.

93.   No defendant or employee or agent of MDT ever informed Dentist 2 that his/her Periolase unit was used or refurbished, or had been manufactured approximately a decade earlier.

94.   Dentist 2 resided in a state other than California at the time of his purchase of the Periolase unit.

### ALTER EGO LIABILITY

95.   Defendants Dr. Robert Harold Gregg II and Dr. Dawn Gregg are personally liable for the false and fraudulent statements and omissions of MDT, as well as the breach of contract by MDT, as alter egos.

96.   The owners and managers of MDT, including Dr. Robert Harold Gregg II and Dr. Dawn Gregg,  failed to maintain corporate formalities. For example, from 2004 to 2021, MDT did not file any statement of information with the California Secretary of State. MDT was pending suspension by the California Secretary of State as of January 30, 2019.

97.   Additionally, adherence to MDT's corporate form would further injustice and fraud for the reasons explained above.

### ARBITRATION-RELATED ALLEGATIONS

98.    The Federal Arbitration Act ("FAA") normally governs arbitration agreements. However, "[w]here . . . parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward."

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S.
468, 479 (1989).

99.   The purchase order agreement between MDT and plaintiff
includes the following provision, which is also included in the purchase order
agreements executed by Dentist 1 and Dentist 2:

> **Governing Law**
>
> This Agreement shall be governed by the laws of California.
> The Parties agree that any dispute, claim or controversy
> arising out of or relating to this Agreement of the
> interpretation or enforcement of this Agreement, shall be
> determined by arbitration before a single neutral arbitrator
> in Orange County, California. The arbitration shall be
> administered by JAMS pursuant to its Comprehensive
> Arbitration Rules and Procedures and in accordance with the
> Expedited Procedures in those Rules. Judgment on any award
> may be entered into any court having jurisdiction.

100.  California law therefore governs the arbitration agreement
between plaintiff and MDT.

101.  California law dictates that courts cannot order arbitration
pursuant to an arbitration agreement if "[g]rounds exist for rescission of the
agreement." Cal. Civ. Proc. Code § 1281.2(b).

102.  California law further dictates that grounds for recission of an
agreement exist if, *inter alia*, (i) "the consent of the party rescinding . . . was
. . . obtained through . . . fraud . . . exercised by or with the connivance of the
party as to whom he rescinds;" (ii) "the consideration for the obligation of the
rescinding party fails, in whole or in part, through the fault of the party as to

16

whom he rescinds;" (iii) "the public interest will be prejudiced by permitting the contract to stand." Cal. Civ. Code § 1689(b).

103. Grounds for rescission of arbitration of provision of the purchase order agreement exist because (i) as explained above, the consent of plaintiff was obtained by fraud perpetrated by defendants; (ii) there was no consideration for the arbitration agreement or, alternatively, to the extent the Periolase unit constituted consideration for the arbitration agreement, it failed because MDT and the other defendants fraudulently provided plaintiff a used unit when the consideration called for was a new unit; (iii) the public interest will be prejudiced by permitting defendants to hide their fraud in private arbitration proceedings. *See Lincoln Benefit Life Co. v. Dallal*, 500 F. Supp. 3d 1041, 1068 (C.D. Cal. 2020) ("Civil Code Section 1689 . . . specifically permits contracts to be rescinded if the 'public interest will be prejudiced by permitting the contract to stand' . . . . The [defendants'] unlawful acts in claiming fraudulent benefits while trying to keep the Policy in force certainly defies public policy.").

104. Further, California law dictates that courts may decline to order arbitration pursuant to an arbitration agreement if "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. " Cal. Civ. Proc. Code § 1281.2(c).

105. By the filing of this complaint, plaintiff, a party to the above-described arbitration agreement, has become a party to a pending court action with third parties, *i.e.*, the individual non-MDT defendants who are not named as parties in the purchase order agreement, arising out of the same transaction or series of related transactions as plaintiff's dispute with MDT,

and there is a possibility of conflicting rulings on a common issue of law and fact.

106. For all these reasons, plaintiff is entitled to declaratory relief, specifically a finding and declaration that defendants are not entitled to a court order compelling arbitration of the claims asserted in this complaint.

107. On information and belief, MDT included the same arbitration and choice-of-law provisions in all purchase order agreements for Periolase units in and around 2020 and 2021.

## CLASS ALLEGATIONS

### I. The Proposed Class

108. Plaintiff seeks damages, declaratory relief, and injunctive relief for himself and the below-defined class pursuant to Federal Rules of Civil Procedure 23(a), (b)(1)-(3), and/or (c)(4):

> All persons in the United States, including the District of Columbia and Puerto Rico, who purchased a PerioLase MVP-7 from Millenium Dental Technologies, Inc., and received a previously owned PerioLase MVP-7 from January 1, 2020, to December 31, 2021. Excluded from the class are defendants and any entity in which defendants have a controlling interest, any of the defendants' legal representatives, officers, directors, assignees, and successors, the Judge to whom this case is assigned, any member of the Judge's immediate family, and the Judge's staff and their immediate families.

## II.    Requirements of F.R.C.P. 23

### A.    Numerosity & Ascertainability

109. Members of the class are so numerous and geographically dispersed that joinder of all members is impracticable. During the class period, MDT likely sold hundreds more Periolase units to dentists around the country. Class members are readily identifiable from information and records in the possession of MDT, which include electronic records of the unique serial number of each Periolase unit, as well as each unit's sale history, repair, and service history. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, or published notice.

### B.    Predominance of Common Issues

110. This action involves common questions of law and fact that predominate over any questions affecting individual class members.

111. Common questions of law and fact will include, without limitation, the following:

      a.    Whether defendants conspired to commit a RICO violation;

      b.    Whether defendants engaged in the RICO Enterprise;

      c.    Whether the RICO Enterprise engaged in interstate commerce;

      d.    Whether defendants committed RICO predicate acts, namely, whether defendants caused to be transmitted interstate wires to further a scheme to defraud;

      e.    Whether defendants made material false representations regarding the sale of Periolase units;

      f.    Whether defendants derived income from RICO predicate acts;

g. Whether defendants knew their false representations regarding the sale of Periolase units were false;

h. Whether defendants intended for class members to rely on defendants' false representations regarding the sale of Periolase units;

i. Whether MDT breached its contractual obligations by providing used Periolase units;

j. Whether defendants intentionally failed to disclose material information regarding the Periolase units;

k. Whether class members overpaid for used Periolase units;

l. Whether declaratory relief is appropriate, including, but not limited to, whether class members entitled to a finding and declaration that defendants are not entitled to any court order compelling arbitration of the claims asserted in this complaint;

m. Whether injunctive relief is appropriate.

**C. Typicality**

112. Plaintiff's claims are typical of class members' claims because, among other things, all class members were comparably injured through defendants' comparably wrongful conduct as described above. Plaintiff, like all class members, fraudulently received a Periolase unit from defendants that was used, refurbished, years-old, repaired, and/or subject to prior customer complaints. Defendants' misconduct is common to all class members and represents a common thread of misconduct resulting in comparable injury to all class members.

### D.   Adequacy of Representation

113. Plaintiff is an adequate class representative because his interests do not conflict with the interests of the other class members he seeks to represent; plaintiff has retained competent counsel with experience in complex civil litigation; and plaintiff intends to prosecute this action vigorously. The class's interests will be fairly and adequately protected by plaintiff and his counsel.

### E.   Superiority, Injunctive and Declaratory Relief, and Risk of Inconsistent or Dispositive Adjudications

114.   Defendants have acted in a uniform manner with respect to the plaintiffs and class members. Absent a class action, it is unlikely that most class members would even discover their claims given defendants' efforts to conceal their fraud. Many class members, as busy professionals, would likely find the practical burdens of litigating their claims prohibitively high and claims would therefore have no effective remedy at law. Absent a class action, defendants' fraud will therefore stand without effective remedy.

115.   Class treatment in this Court, as a court with original jurisdiction over the Class claims, will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication by providing common answers to the common questions of knowledge, conduct, duty and breach, that predominate in this action.

116. Class-wide declaratory, equitable, and injunctive relief is appropriate under FRCP 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the class, and inconsistent adjudications with respect to the defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests. Class-wide relief and Court supervision under

F.R.C.P. 23 assures fair, consistent, and equitable treatment and protection of all class members, and uniformity and consistency in defendants' discharge of their duties to perform corrective action regarding the fraudulently sold Periolase units.

## TOLLING OF STATUTES OF LIMITATION

### I.    Fraudulent Concealment

117. Within the period of any applicable statutes of limitation, defendants actively concealed and failed to disclose that the Periolase units provided to plaintiff and members of the proposed class were used, refurbished, or years-old which prevented plaintiff and members of the proposed class from learning the truth.

118. Defendants knew that revealing the truth to plaintiff or members of the proposed class would reduce MDT's sales and profits, and damage MDT's reputation in the dental industry.

119. Defendants intended for plaintiff and members of the proposed class to rely on defendants' false and misleading statements and omissions.

120. Accordingly, plaintiff and members of the proposed class were damaged by defendants' false and misleading representations and omissions and fraudulent concealment described herein.

### II.    Estoppel

121. Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature of the Periolase units sold to plaintiff and members of the proposed class.

122. Even if plaintiff or members of the proposed class were aware or could have been aware of the facts giving rise to their causes of action within the limitations period of their claims, their inability to timely file their claims are the direct result of defendants' willful and intentional misconduct.

It would be unconscionable to enforce the limitation period against plaintiff or members of the proposed class, and gross injustice would result from doing so.

123.  For these reasons, defendants are estopped from relying on any statutes of limitations in defense of this action.

### III.    The Discovery Rule

124.  At the time they purchased Periolase units, due to defendants' false and misleading statements and omissions, plaintiff and members of the proposed class could not have discovered through the exercise of reasonable diligence that defendants were concealing the age and prior use of the Periolase units.

125.  Plaintiff and members of the proposed class did not discover, and did not know of, facts that would have caused a reasonable person to suspect that defendants fraudulently provided them used and refurbished Periolase units.

126.  For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

### CAUSES OF ACTION

### I.    Claim I – Civil RICO, 18 U.S.C. § 1962(a), (c)-(d)

*On behalf of Dr. Fakhrzadeh individually and on behalf of*
*the proposed class against all defendants*

127. Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

128.  Plaintiff brings this claim on behalf of himself and the proposed class against all defendants.

129.  18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

130.  18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

131.  18 U.S.C. § 1962(d) makes it unlawful for "any person to conspire to violate" 18 U.S.C. §§ 1962(a) and (c).

132.  At all relevant times, MDT, Dr. Robert Harold Gregg II, Dr. Dawn Gregg, Brian Alexander, Anthony Cannon, and Audrey Quinonez were "persons" under 18 U.S.C. § 1961(3) because they were capable of holding or did hold "a legal or beneficial interest in property."

133.  At all relevant times, MDT was an "enterprise" under 18 U.S.C. § 1961(4).

134.  In and around 2020 and 2021, MDT derived income from a pattern of racketeering activity in which MDT participated as a principal, namely at least two predicate acts of wire fraud in violation of 18 U.S.C. § 1343 within the prior 10 years.

135.  MDT used such income in the operation of MDT while MDT engaged in interstate commerce, namely the interstate sales of Periolase units.

136.  In and around 2020 and 2021, individual defendants Dr. Robert Harold Gregg II, Dr. Dawn Gregg, Brian Alexander, Anthony Cannon, and Audrey Quinonez associated with MDT.

137. In and around 2020 and 2021, defendants Dr. Robert Harold Gregg II, Dr. Dawn Gregg, Brian Alexander, Anthony Cannon, Audrey Quinonez, and MDT each committed, conspired to commit, or aided and abetted in the commission of at least two predicate acts of racketeering activity, namely wire fraud in violation of 18 U.S.C. § 1343, within the prior ten years.

138.  In and around 2020 and 2021, each defendant devised or intended to devise a scheme to obtain the money of plaintiff and the members of the proposed class by means of false or fraudulent pretenses, representations, or promises, namely, false and fraudulent representations that defendants would provide plaintiff and members of the proposed class new Periolase units.

139. For the purpose of executing this scheme, defendants each transmitted or caused to be transmitted, conspired to transmit or to cause to be transmitted, or aided and abetted in the transmission of or the causing of the transmission of, wires in interstate commerce, including, but not limited to, the following:

      a.   The March 2021 telephone call between Alexander, Cannon, and plaintiff;

      b.   The March 23, 2021, email from Alexander to plaintiff with the subject "LANAP - Rutgers Grad Special Pricing Consideration";

      c.   The March 2021 text message communications between Alexander, non-party DiPerri, and plaintiff;

    d.    The April 2, 2021, email from Alexander to plaintiff with the subject "Rutgers Grad - Historic Price – New;"

    e.    The May 27, 2021, email thread with the subject "Update on ETA and shipment" containing emails from Alexander and non-party Samantha DiPerri to plaintiff;

    f.    The June 11, 2021, email from Quinonez to plaintiff with the subject "PerioLase Warranty";

    g.    The email transmission of purchase order agreements to plaintiff and members of the proposed class, including Dentists 1 and 2; and

    h.    Electronic payments that defendants fraudulently obtained from plaintiff and members of the proposed class, including Dentists 1 and 2.

140.  The multiple acts of racketeering activity that the defendants committed, conspired to commit, or aided and abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a pattern of racketeering activity.

141.  Each instance of racketeering activity alleged herein was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including, but not limited to, plaintiff, Dentist 1 and Dentist 2.

142.  Each of the defendants aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. § 1343 offenses.

143. Defendants' participation in the MDT enterprise through a pattern of racketeering activities to carry out defendant's fraudulent scheme injured plaintiff and the members of the proposed class in the form of losses

of money that logically, directly and foreseeably arise from defendant's fraudulent actions. Such injuries include, but are not limited to, the cost of the Periolase unit and training that would not have otherwise been purchased, costs incurred for travel to California for Periolase training that would not have otherwise been incurred, overpayment for used Periolase units, a diminished ability to resell Periolase units, diminished resale value of used Periolase units, shortened usable lifespan of the Periolase units, and lost future profits caused by the shortened usable lifespan of the Periolase units.

144.  Plaintiff and members of the proposed class are therefore entitled to, *inter alia*, treble damages, costs, and attorneys' fees.

## II.    Claim II – Fraudulent Inducement

*On behalf of Dr. Fakhrzadeh individually and on behalf of*
*the proposed class against all defendants*

153.  Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

154.  Plaintiff brings this claim on behalf of himself and the proposed class against all defendants.

155.  In and around 2020 and 2021, defendants represented that they intended to sell plaintiff and members of the proposed class new Periolase units.

156.  For example, in March and April of 2021, defendants Alexander and Cannon represented to plaintiff, Dentist 1 and Dentist 2 that they would be receiving discounts of approximately 50 percent on the purchase of new Periolase units due to MDT's address slowing sales caused by the COVID-19 pandemic, and not because they were purchasing used Periolase units.

157.  Defendants provided plaintiff, Dentist 1, and Dentist 2, as well as all members of the proposed class, purchase order agreements stating, *inter alia*, ""[i]f the Agreement is for . . . a PerioLase MVP-7™ laser . . . a PerioLase MVP-7™ Periodontal Laser is specifically manufactured and assembled by MDT for Buyer." On information and belief, defendants included the same provision in all purchase order agreements provided to members of the proposed class.

158.  Defendants had no intention of honoring their false promises when defendants made them.

159. Defendants deliberately made their false promises to induce plaintiff and members of the proposed class to accept the purchase order agreements.

160. Plaintiff and class members relied to their detriment on defendants' false promises by accepting the purchase order agreements, which they would not have done if he had known the falsity of defendants' promises.

161. Plaintiff and class members were justified in relying on such statements by defendants because defendants fraudulently concealed the truth and there was no independent manner for plaintiff and class members to verify the truth or falsity of defendants' statements.

162. Defendants' fraud was the direct and proximate cause of loss suffered by plaintiff and members of the proposed class, which plaintiff and members of the proposed class would not have sustained but for defendants' fraud. Such losses include, but are not limited to, the cost of the Periolase unit and training that would not have otherwise been purchased, costs incurred for travel to California for Periolase training that would not have otherwise been incurred, overpayment for the used Periolase units,

a diminished ability to resell the Periolase units, diminished resale value of the used Periolase units, shortened usable lifespan of the Periolase units, and lost future profits caused by the shortened usable lifespan of the Periolase units.

163. As a result of defendants' fraud, plaintiff and members of the proposed class are entitled to actual damages against the individual defendants.

164. As a result of defendants' fraud, plaintiff and members of the proposed class are entitled to punitive damages against all defendants.

165. Defendants Dr. Robert Harold Gregg II and Dr. Dawn Gregg are personally liable as alter egos for MDT's fraud. MDT failed to maintain corporate formalities during the relevant time, including by failing to file statements of information with the California Secretary of State from 2004 to 2021. It would be inequitable to permit Dr. Robert Harold Gregg II and Dr. Dawn Gregg to escape liability for the false and fraudulent actions of MDT and its employees or agents.

### III.         Claim III – Fraudulent Concealment
*On behalf of Dr. Fakhrzadeh individually and on behalf of*
*the proposed class against all defendants*

166. Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

167. Plaintiff brings this claim on behalf of himself and the proposed class against all defendants.

168. In and around 2020 and 2021, Defendants failed to disclose material information to plaintiff and members of the proposed class, namely, that the Periolase units that plaintiff and members of the proposed class

received were used, refurbished, repaired, and/or subject to prior customer complaints.

169. Such information was material in that plaintiff and members of the proposed class reasonably would not have purchased the Periolase units and related training, or, alternatively, would have paid a lower price if they had known such information.

170. Defendants had a duty to disclose complete and accurate information about the age, prior use, prior repairs, and prior complaints of the Periolase units to plaintiff and members of the proposed class because defendants had exclusive knowledge of such information due to defendants' efforts to conceal such information.

171. Defendants had a duty to disclose complete and accurate information about the age, prior use, prior repairs, and prior complaints of the Periolase units to plaintiff and members of the proposed class because defendants had actual knowledge of such information, yet deliberately omitted, concealed, and failed to disclose such information.

172. Defendants, in deliberately omitting, concealing, and failing to disclose information regarding the age, prior use, prior repairs, and prior complaints of the Periolase units intended to induce plaintiff and members of the proposed class to purchase the Periolase units and training that plaintiff and members of the proposed class would not have otherwise purchased or, alternatively, would have otherwise purchased at a lower price.

173. Plaintiff and members of the proposed class relied to their detriment on defendants' misrepresentations and omissions. Plaintiff and members of the proposed class were unaware of the true age, prior use, prior repairs, and prior complaints of the Periolase units. Plaintiff and members of the proposed class would have acted differently if they had known such

information in that plaintiff and members of the proposed class would not have purchased the Periolase units and training or, alternatively, would have purchased them at a lower price.

174. Defendants' misleading omissions and incomplete information, inducing reliance by plaintiff and members of the proposed class, was the direct and proximate cause of loss suffered by plaintiff and members of the proposed class, which plaintiff and members of the proposed class would not have sustained but for defendants' fraud. Such losses include, but are not limited to, the cost of the Periolase unit and training that would not have otherwise been purchased, costs incurred for travel to California for Periolase training that would not have otherwise been incurred, overpayment for the used Periolase units, a diminished ability to resell the Periolase units, diminished resale value of the used Periolase units, shortened usable lifespan of the Periolase units, and lost future profits caused by the shortened usable lifespan of the Periolase unit.

175. As a result of defendants' fraud, plaintiff and members of the proposed class are entitled to actual damages against the individual defendants.

176. As a result of defendants' fraud, plaintiff and members of the proposed class are entitled to punitive damages against all defendants.

177. Defendants Dr. Robert Harold Gregg II and Dr. Dawn Gregg are personally liable as alter egos for MDT's fraud. MDT failed to maintain corporate formalities during the relevant time, including by failing to file statements of information with the California Secretary of State from 2004 to 2021. It would be inequitable to permit Dr. Robert Harold Gregg II and Dr. Dawn Gregg to escape liability for the false and fraudulent actions of MDT and its employees or agents.

## IV.    Claim IV – Unfair Competition Law,
## Cal. Bus. & Prof. Code § 17200

*On behalf of Dr. Fakhrzadeh individually and on behalf of*
*the proposed class against all defendants*

178. Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

179. Plaintiff brings this claim on behalf of himself and the proposed class against all defendants.

180. At all relevant times, each defendant was a "person" under Cal. Bus. & Prof. Code § 17201.

181.   Defendants committed unfair and fraudulent business acts that caused losses for plaintiff and the members of the proposed class, namely the making of false and fraudulent statements and omissions regarding the sale of Periolase units described above. Such losses include, but are not limited to, the cost of the Periolase unit and training that would not have otherwise been purchased, costs incurred for travel to California for Periolase training that would not have otherwise been incurred, overpayment for the used Periolase units, a diminished ability to resell the Periolase units, diminished resale value of the used Periolase units, shortened usable lifespan of the Periolase units, and lost future profits caused by the shortened usable lifespan of the Periolase unit.

182. Plaintiff and the members of the proposed class are therefore entitled to restitution, declaratory relief, and injunctive relief.

## V.    Claim V – Breach of Contract

*On behalf of Dr. Fakhrzadeh individually and on behalf of*
*the proposed class against MDT, Dr. Robert Harold Gregg II, and Dr. Dawn*
*Gregg*

183. Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

184. Plaintiff brings this claim on behalf of himself and the proposed class against all defendants.

185. Defendant MDT breached the purchase order agreements entered by plaintiff and members of the proposed class by surreptitiously providing plaintiff and members of the proposed class Periolase units that were used, refurbished, repaired, and/or subject to prior customer complaints, even though the purchase order agreements, all drafted solely by MDT, specifically promised that "a PerioLase MVP-7™ Periodontal Laser is specifically manufactured and assembled by MDT for Buyer."

186. This breach caused plaintiff and members of the proposed class losses, including, but not limited to, the cost of the Periolase unit and training that he would not have otherwise purchased, costs incurred for travel to California for Periolase training that he would not have otherwise incurred, overpayment for the used Periolase unit, a diminished ability to resell the Periolase unit, diminished resale value of the used Periolase unit, shortened usable lifespan of the Periolase unit, and lost profits caused by the shortened usable lifespan of the Periolase unit.

187. Plaintiff and members of the proposed class are therefore entitled to, at their election, recission of their respective purchase order agreements, or, alternatively, actual damages. *See* F.R.C.P. 8(a)(3). Regardless of such

election, plaintiff and members of the proposed class are entitled to actual damages that do not duplicate and are not inconsistent with rescission of the purchase order agreements. Cal. Civ. Code § 1692.

188. Defendants Dr. Robert Harold Gregg II and Dr. Dawn Gregg are personally liable as alter egos for MDT's contract breaches. MDT failed to maintain corporate formalities during the relevant time, including by failing to file statements of information with the California Secretary of State from 2004 to 2021. It would be inequitable to permit Dr. Robert Harold Gregg II and Dr. Dawn Gregg to escape liability for the false and fraudulent actions of MDT and its employees or agents.

### VI.    Claim VI – Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

*On behalf of Dr. Fakhrzadeh individually*
*and on behalf of the proposed class against all defendants*

189. Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in each and every preceding paragraph of this complaint as though fully set forth herein.

190. Plaintiff brings this claim on behalf of himself and the proposed class against all defendants.

191. An actual controversy of sufficient immediacy exists between the parties as to whether the arbitration agreements within the purchase order agreements entered into by plaintiff and members of the proposed class entitle defendants to an order compelling arbitration under Cal. Civ. Proc. Code § 1281.2.

192. On behalf of himself and the proposed class, plaintiff seeks declaratory judgment from this Court that the defendants are not entitled to an order compelling arbitration.

# **PRAYER FOR RELIEF**

193.    Plaintiff, individually and on behalf of members of the proposed class, respectfully requests that the Court enter judgment in his favor and against defendants, as follows:

a.    Certification of the proposed class, including appointment of plaintiff's counsel as class counsel;

b.    At the election of plaintiff and members of the proposed class, recission of their respective purchase order agreements, or, alternatively, actual damages in amounts to be determined by jury;

c.    Regardless of such election, actual damages that do not duplicate and are not inconsistent with rescission of the purchase order agreements in amounts to be determined by jury, Cal. Civ. Code § 1692;

d.    Treble damages under 18 U.S.C. § 1964(c);

e.    Punitive damages;

f.    Declaratory judgment, specifically a finding and declaration that defendants are not entitled to any court order compelling arbitration of the claims asserted in this complaint and that defendants' actions are unlawful;

g.    Injunctive relief, including an order enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and conduct and practices alleged in this complaint;

h.    Costs;

i.    Attorneys' fees;

j.    Interest; and

//

35

k.      Any other remedy deemed appropriate by the Court.


Respectfully submitted,

Dated:  October 16, 2025        BARRIENTOS PC

*/s/ J. Alejandro Barrientos*

J. Alejandro Barrientos
Attorney for Plaintiff,
Amir Fakhrzadeh

## <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on behalf of himself and the proposed class on all claims for relief alleged herein.


Respectfully submitted,

Dated:  October 16, 2025          BARRIENTOS PC

*/s/ J. Alejandro Barrientos*
J. Alejandro Barrientos
Attorney for Plaintiff,
Amir Fakhrzadeh